IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHEILA D. ST.CLAIR                      *
          Plaintiff,
          v.                                   *     CIVIL ACTION NO. AW-05-1046

U.S. DEPARTMENT OF COMMERCE, *et al.*  *
          Defendants.
                                           ***

**MEMORANDUM OPINION**

Plaintiff Sheila D. St. Clair ("St. Clair" or "Plaintiff") brings this suit against Defendant United States Department of Commerce (the "Agency" or "Defendant"), alleging that Defendant discriminated against her because of her sex. Currently pending before the Court is Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Paper No. 29). The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, the Court will GRANT Defendant's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to Plaintiff.[1] On May 21, 2001, St. Clair was hired by Dr. Eric J. Amis ("Amis"), Chief of the Polymers Division of the National Institute of Standards and Technology ("NIST"), a bureau of the Agency. Prior to her employment as an Office Automation Assistant to Amis, St. Clair had eighteen (18) years of federal government service from 1977 to 1995. For approximately fifteen (15) years, St. Clair worked as a Writer/Editor in the Public and Business Affairs Division at NIST. In that capacity, she received numerous awards and merit based salary increases, and had never been subject to any adverse personnel actions. Due

---

[1] A detailed recitation of the facts is given to provide a background for Plaintiff's claims.

1

to personal family issues, St. Clair voluntarily left federal service in 1995. She returned to NIST in 2001 to continue her government career and to gain sufficient service for retirement.

St. Clair claims that from the beginning of her return to NIST, Amis sought to intimidate and harass her because of her gender, ultimately resulting in her termination from the Agency. For example, on her first day of work, Amis physically and mentally intimidated St. Clair and yelled at her when she indicated that she did not want to drink coffee at the office. During another incident, Amis became angry and impatient with St. Clair's inability to receive email. He stepped up immediately behind St. Clair who was seated at her desk and tried to fix her computer. When he was unable to resolve the problem, he slammed the computer's mouse hard on the desk and spit out, "Damnit" and left. St. Clair jumped in her chair when he slammed the mouse and was very intimidated with his temper and his use of profanity.

When Dawn Bradley ("Bradley") became Amis' secretary in late June 2001, St. Clair was subjected to overtly sexually explicit behavior between Bradley and Amis that St. Clair found offensive and completely inappropriate for a professional setting. Bradley expressed to St. Clair on numerous occasions that she was attracted to Amis and would like to "fuck him", " have sex with him", and "do him." During another incident, St. Clair made a comment about the shortness of Bradley's skirt. Bradley made an offhand comment about wearing the skirt for Amis and lifted both of her legs high in the air so that St. Clair could see her underwear. On numerous occasions, Bradley would call St. Clair over to her computer to show her pornographic jokes. Bradley's sexual antics were disturbing, distracting and interfered with St. Clair's ability to work.

At the end of August 2001, Amis gave St. Clair a grill which she picked up from his residence. As he offered St. Clair the grill, he stepped up next to her and whispered in her ear, "Now, I expect an invitation to your house for steaks on this grill." St. Clair was shocked and

2

interpreted his comment as a sexual advance. Later, after leaving Amis' residence and stopping at a convenience store, Bradley and Amis started looking at a pornographic magazine and attempted to illicit St. Clair to participate in this conduct.

During the time St. Clair worked for Amis, he assigned a tremendous amount of work to St. Clair, including backing up all of the Division secretaries and his Administrative Officer; managing and maintaining the photos on the Division webpage; editing and typesetting the Division's annual report; and several other projects. Additionally, St. Clair was required to attend numerous classes and to learn countless software programs to meet the demands of work. Because of this intense training schedule, St. Clair was often away from the office. Coupled with the fact that Amis traveled extensively, the two had limited contact and days would often pass without St. Clair seeing Amis. On the occasions that they did see and interact with each other, Amis harassed and intimidated St. Clair.

On several occasions when St. Clair was absent, Amis would sabotage her work. For example, Amis would search through her desk, shifting papers and sometimes hiding projects that he expected her to complete. Additionally, Amis would sabotage her work by changing data or re-formatting documents so that St. Clair would have to reenter or reconfigure a project with a tight deadline. During an especially tight deadline for completion of the annual report that was due at the end of the fiscal year, Amis increased St. Clair's work load by demanding that she purchase and set-up new office furniture. The entire office was completely dismantled, including the computer St. Clair needed to work on the annual report and it took several days to put the office together with the new furniture. St. Clair contends that this task was designed by Amis to undermine her ability to complete her regularly assigned tasks, as this project was burdensome and interfered with the time remaining for her to complete the annual report.

While St. Clair was working on this project, Amis kept up his relentless harassment and intimidation. For example, when the delivery man came to deliver the furniture, Amis made a very sexual insinuation about Ms. St. Clair and the delivery man.  St. Clair was very embarrassed by Amis' inappropriate remark.  When St. Clair began to arrange her office after the delivery, Amis came to her desk and told her that she should be working down the hall on another computer.  St. Clair replied that she was cleaning her desk and setting up her computer.  As he turned to walk away, he abruptly stopped and rushed up to St. Clair and yelled viciously, "I told you to go down the

hall to the computer there!" St. Clair froze with fear, stepped away from him and ran down the hall, fearing for her physical well-being.

Despite these obstacles and the constant harassment by Amis, St. Clair nonetheless excelled and performed exceedingly well in her duties.  She received a "Cash-in-a-Flash" (CIAF) award of $500.00, the highest amount that could be awarded, for her work on preparing and producing the annual report for the period from August 1, 2001 to September 30, 2001.  In her performance review, which was dated June 19, but which she did not receive until September 17, just two (2) months prior to her termination for supposed poor work performance, St. Clair was given a satisfactory rating.  Amis asked St. Clair to backdate it to its original due date, which was June 19.  Because St. Clair was terrified of Amis, she did as she was told.   Due to her satisfactory rating in all of her performance elements, St. Clair received a 1.5% pay increase and a $500.00 bonus in September 2001, just two months prior to her termination in November.

Despite St. Clair's apparent satisfactory performance, on November 19, 2001, Amis and Helene Inman, of the Human Resource Management Division, terminated St. Clair by presenting her with a memorandum which outlined Amis' reasons for her termination.  When St. Clair asked

4

about her rights to challenge the decision, Amis and Ms. Inman told her that her termination was final and that there was nothing that she could do about it. The written termination memorandum had inaccurate and incomplete information, as it simply stated that if she believed her termination occurred because of her martial status or because of partisan political reasons, St. Clair had the right to file an appeal to the Merit Systems Protection Board ("MSPB"). Absent in this notification of St. Clair's "rights" was any information indicting that St. Clair had the right to file a complaint with the Equal Employment Opportunity Commission ("EEOC").

On an unknown date, St. Clair filed a complaint with the Office of Special Counsel ("OSC") alleging that the Agency's decision to terminate her during her probationary period was due to protected whistle-blowing activity. On February 28, 2002, the OSC notified St. Clair that it had terminated its inquiry and that she could pursue an Individual Right of Action ("IRA") appeal with the Merit Systems Protection Board ("MSPB"). There is no indication that St. Clair notified OSC of her discrimination claims. St. Clair filed an IRA appeal with the MSPB on April 16, 2002, alleging that the Agency manufactured specious performance-based reasons to terminate her after she disclosed her supervisor's use of government resources to conduct personal business and that her supervisor and his secretary worked many late evenings and weekends. St. Clair did not indicate on the MSPB appeal form that the Agency's actions involved sexual harassment or created a hostile work environment.

On May 21, 2002, the MSPB administrative judge ("AJ") found that St. Clair made a non-frivolous charge with respect to the personal business allegation, but not with respect to the allegations concerning the hours the supervisor and his secretary worked. The AJ then dismissed St. Clair's claims because she found that St. Clair did not make disclosures to anyone in a position to remedy the situation and did not make a non-frivolous claim that her disclosures were

contributing factors in her impending termination and resulting resignation. St. Clair did not seek Board review.

St. Clair first contacted the Agency's Office of Civil Rights ("OCR") on August 22, 2002, alleging that because of her sex, she had been subjected to a hostile work environment by her former supervisor, Dr. Amis, and when she was forced to resign on November 19, 2001, in lieu of termination. St. Clair filed a formal EEO complaint. OCR initially accepted St. Clair's termination allegation for investigation on November 4, 2002, and on November 15, 2002, issued a Corrected Notice of Acceptance that included St. Clair's hostile work environment claims. The Agency did not complete the Report of Investigation ("ROI") within 180 days, and on April 29, 2003, St. Clair requested a EEOC hearing. On June 4, 2003, OCR issued a Final Agency Decision dismissing St. Clair's administrative complaint for failure to exhaust her administrative remedies for untimely contact with an EEO counselor and because her complaint constituted a collateral attack on the decisions of the OSC and the MSPB. St. Clair appealed the Agency's dismissal to the EEOC's Office of Federal Operations ("OFO") on August 25, 2003. On September 23, 2003, St. Clair filed a second appeal with OFO alleging that the Agency's Final Agency Decision was invalid and that the AJ mistakenly dismissed her appeal based on the belief that Plaintiff had a MSPB mixed case, rather than an Individual Right of Action. On August 5, 2004, OFO issued a decision finding that St. Clair's complaint was properly dismissed pursuant to 29 C.F.R. § 1614.107(a)(2) for untimely EEO counselor contact. OFO found that St. Clair presented no persuasive arguments or evidence warranting an extension of the time limit for initiating EEO counselor contact.

St. Clair filed a Request for Reconsideration on September 7, 2004, alleging that she was denied the opportunity to present evidence concerning the timeliness of her complaint. St. Clair further alleged that the time period for counselor contact was waived because the Agency failed to

advise St. Clair of her EEO rights in the November 19, 2001 memorandum of termination during probationary period. On January 18, 2005, OFO denied St. Clair's Request for Reconsideration finding that Plaintiff failed to meet the criteria for reconsideration under 19 C.F.R. § 1614.405(b). Thereafter, on April 15, 2005, St. Clair filed her Complaint with the Court alleging that her supervisor created a hostile work environment and she was forced to resign on the basis of her sex.

## **STANDARD OF REVIEW**

A court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiffs'] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

In the context of federal employment discrimination, a plaintiff must not only raise allegations in a complaint that were raised in the administr+ative process, but must also timely meet

the requirements for making a discrimination claim. *See Brown v. General Services Admin.*, 425 U.S. 820, 832-33 (1976); *Hicks v. Baltimore Gas & Elec. Co.*, 829 F. Supp. 791, 794-795 (D. Md. 1992) (Legg, J.), *aff'd*, 998 F.2d 1009 (4th Cir. 1993). In addition, when a party contends that the plaintiff's complaint fails to allege facts upon which subject-matter jurisdiction can be found, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Thus, for the instant Rule 12(b)(1) and 12(b)(6) motions, the "moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## ANALYSIS

**A.     Title VII Claim**

As a prerequisite for bringing a Title VII action in this Court, an aggrieved employee must timely exhaust her administrative remedies. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408; *see also Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2002) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976); *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)). The procedures for exhausting administrative remedies are outlined in 29 C.F.R. Part 1614.[2] An employee's failure to exhaust administrative remedies requires dismissal of the action. *See Medlock*, 336 F. Supp. 2d. at 262.

The 45-day notice requirement is not jurisdictional, but operates like a statute of limitations.

---

[2] Specifically, the employee must seek an informal resolution of the problem by contacting the employing agency's EEO counselor "within 45 calendar days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).

8

*Zipes v. Trans World Airlines, Inc.*, 455 U.D. 385, 393 (1982); *Zografov*, 779 F.2d at 968-69; *Aronberg v. Walters*, 755 F.2d 1114, 1116 (4th Cir. 1985). Therefore, "where an employee fails to make timely contact with the EEO office, courts will equitably toll the statute of limitations only when the government should be estopped from asserting the time bar . . . ." *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992). In order to establish that the government should be equitably estopped, the employee must show affirmative misconduct on the part of the government agency. *Zografov*, 779 F.2d at 969. Equitable tolling is a "narrow limitations exception" that is to be used sparingly. *See Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990) (en banc). The employee's failure to timely file must be the result of "either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay.'" *Id.* at 201 (quoting *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982)).

Plaintiff argues that the dismissal of this action under Rule 12(b)(1) would be improper because Plaintiff has alleged that Defendant intentionally misled Plaintiff concerning her rights to sue. *See* Am. Compl. ¶¶ 35, 37, and 39. The Fourth Circuit has held that "[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction. A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). While this Court must construe Plaintiff's allegations in the light most favorable to Plaintiff, the Court is not required to accept as true legal conclusions asserted by Plaintiff. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Although Plaintiff alleges that Defendant intentionally misled her, the facts alleged in Plaintiff's Complaint does not sufficiently support this conclusion. Nowhere in Plaintiff's Amended Complaint does she allege facts that show a deliberate design on the part of the Agency to cause

9

Plaintiff to delay filing this action for sex discrimination. The law does not require an employer to give an employee actual notice of EEOC rights. *See*, *e.g.*, 29 C.F.R. §§ 1614.102(b)(4) and 1614.105(a)(2). Rather, constructive notice is sufficient to establish that the Plaintiff knew or should have known of her EEOC rights. *See Johnson v. Henderson*, 314 F.3d 409, 415 n.4 (9th Cir. 2002) (employees had constructive notice of EEOC rights through postings around the workplace). In the present case, Plaintiff has not alleged that she had no constructive notice of her rights. Further, Plaintiff does not deny receiving information about the EEO process at new employee orientation on May 21-22, 2001. The record before the Court suggests that Plaintiff did in fact have constructive notice of her EEOC rights. Therefore, Plaintiff's assertion that she was intentionally misled is not supported by the facts. In addition, the facts show that Plaintiff filed a complaint with the OSC sometime prior to February 28, 2002 alleging that her employment was terminated because she participated in protected whistle-blowing activity. Nowhere in that complaint did Plaintiff notified the OSC of her discrimination claims.

Plaintiff first made contact with the EEOC on August 22, 2002, more than seven months after the 45-day deadline. Because she has not established any affirmative misconduct on the part of Defendants, the principles of equitable tolling and estoppel will not operate to excuse Plaintiff's failure to exhaust administrative remedies. Therefore, Plaintiff's Title VII claim must be dismissed.

**B.     Defamation Claim**

In her Amended Complaint, Plaintiff also claims that Dr. Amis, in his personal capacity, defamed Plaintiff and caused her to denied subsequent employment opportunities. Defendants argue that Dr. Amis should be dismissed as a defendant in this action because the Federal Tort Claims Act ("FTCA") shields a federal employee from liability for "negligent or wrongful act[s] or omission[s] . . . while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). The United

States Attorney for the District of Maryland has certified that Dr. Amis was acting within the scope of his employment with the United States government at the time of the alleged defamation. Plaintiff, in her Opposition to Defendants' Motion, does not address the certification of Dr. Amis as a federal employee acting within the scope of his employment. Therefore, Plaintiff apparently abandons this argument. *Anti-Monopoly, Inc. v. Hasboro, Inc.*, 958 F. Supp. 895, 907 (S.D.N.Y.), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) ("[T]he failure to provide argument on a point constitutes abandonment of the issue."). In light of the government's certification of Dr. Amis as a federal employee, Plaintiff cannot pursue her defamation claim against Dr. Amis in his personal capacity. As such, Plaintiff's defamation claim must be dismissed.

## **CONCLUSION**

For the reasons stated above, the Court will grant Defendant's Motion to Dismiss (Paper No. 29). An Order consistent with this Opinion will follow.


Date:   January 29, 2007                                                      /s/
                                                                    Alexander Williams, Jr.
                                                                    United States District Judge